Thank you, Your Honor. Mark Weintraub from the Federal Public Defender's Office, appearing on behalf of the Petitioner and Appellant Matthew Sexton. We are asking this Court to order a limited remand under the Supreme Court's Martinez v. Ryan decision on the issue of ineffective assistance of postconviction counsel. There are actually two issues before the Court. The first is ineffective assistance of trial counsel with respect to his failure to advise the defendant fully before the guilty plea. The second issue – that issue was preserved. It was decided on the merits by Judge Brown under the ADPA deferential standard. And that doesn't require a remand, right? We can decide that on direct – Well, we're asking for a remand on the merits on that issue. Oh, on the merits. I see. Okay. All right. The second issue comes under Martinez v. Ryan, which was decided after the briefs were submitted in this case. We moved the Court for a limited remand. The State has opposed that motion. This panel ordered us to be prepared today to address that issue. Mr. Weintraub, the reason we wanted to hear argument in that case – I'm speaking just for myself at this point – is Martinez is such a new decision, March 20, 2012. We're all trying to understand what the contours of the decision are. And we thought it would – I thought it would be helpful if we had benefit of argument from counsel to help us understand that decision. And here's my question. If the Supreme Court meant what it said, that this is a narrow exception to the Coleman rule, it surely cannot mean that every time there is a claim that a ground for ineffective assistance of counsel was not raised below that you are entitled to a remand. Because otherwise we're going to get these arguments in every case, and the exception will swallow the Coleman rule. So here we have a situation where there were seven grounds urged for ineffective assistance of counsel during the PCR proceeding. You now want to raise two more that the lawyer on post-conviction review failed to raise. Do you read Martinez v. Ryan as broad enough to allow you to expand the scope of ineffective assistance grounds when there were seven grounds that were urged on the PCR court? Let me start by – let me answer by starting with the black-letter rule in Martinez. It's – if it is true, Martinez – the Martinez opinion uses the word narrow. But the Court also explained what it meant by that word. The Court used the word to emphasize that its ruling applies only, first of all, to claims of ineffective assistance of post-conviction counsel. Second, made at the initial review collateral proceeding. In other words, the first – And there was such a claim raised, was there not? Not in the State court. I thought there were seven grounds that we were urged on PCR that amounted to ineffective assistance by trial counsel. And we made that argument to Judge Brown. We argued to Judge Brown – What argument? We argued to Judge Brown that the claim that is before the Court today under Martinez was subsumed within the other ineffective assistance – other ineffective assistance claim. Now, which argument are you talking about before Judge Brown? Two weeks ago? Because Martinez has only been out for less than a month. No, we didn't – we didn't make a Martinez argument. What we argued was that counsel was ineffective prior to the guilty plea. And the way in which he conducted the plea negotiations in the case. Now, the preserved issue – Are you talking about the polygraph and the confidential letter? That's – that is the second half of what I'm talking about. Okay. And that's what the district court said was procedurally barred. That is what the district court said. And what you're asking us to say under Martinez, there's cause and prejudice. Is that – am I understanding that right? That's exactly correct, yes. Okay. Go ahead. In determining prejudice, then, don't we apply the Strickland analysis and ask whether or not you are presenting a substantial claim? Yes. That is the second part of the test. All right. And the Court – If that's the case, isn't the record fully developed on that issue? We know from the affidavits that were filed in the PCR proceeding why counsel went forward with the polygraph. The DA was leaving office and was becoming a circuit court judge. He had had success in convincing other DAs to drop charges when his client successfully passed the polygraph. Why isn't that a reasonable tactical decision that would preclude a finding of prejudice under Strickland or, indeed, a finding even that the first prong had been violated under Strickland? Well, the Court's question has two parts. Well, it's a two-part test, right? First, you have to find there's a violation, and then it was prejudicial. As I interpret the question, the first part of the question is was the record fully developed? The second part of the question is does the record show that there was a strategic purpose behind – a reasonable strategic purpose behind the decision? So let me take the second part of that first. And there are some key facts that I think the Court should focus on. One is that Hadley admitted in his affidavit in the post-conviction court that that was a mistake. That he should have conducted a private polygraph, not a police-administered one. Second, he said that the reason he did that is that he believed his client. Now, I've been doing this at this point almost as long as Mr. Hadley had at the time of these events, and you do not make an effective strategic decision based on whether you believe your client or not. That is incompetent. But wasn't the decision protected by the Oregon rules of privilege because the disclosure, first of all, of the client's insistence that he was innocent in the context of plea negotiations is privileged and cannot be admitted in the prosecution's case in chief? Not exactly. It couldn't have been used in the prosecution's case in chief. However, whatever statements that the defendant made to the polygraph examiner are not privileged. The results of the test are not admissible. Secondly, there is no protection whatsoever. But he's already confessed to the sheriff's deputy. So confessing again to the polygrapher is not a privilege. But that wasn't the prejudice. The prejudice here is that in his letter to counsel and then in the polygraph examination, he said that he did not commit the crime that his younger brother had done it. And then we get to sentencing, at which those statements are not protected, and there was no claim that they should have been protected at sentencing. And the post-conviction or, excuse me, the sentencing court rejected the defense position and gave him consecutive life sentences with a minimum of 50 years based in part on two things. One is that he had attempted to shift the blame to his brother, and second, that he was a liar. Now, the post-conviction, excuse me, the sentencing court would never have had that information if it had not been for trial counsel's decision to expose his client to a police-administered polygraph examination and to turn over the private letter from his client to counsel to the district attorney. And there is nothing in the record indicating that he had consent, informed or otherwise, to do that. But let's let Judge Accoud ask the question. I also have a two-part question. One part is, we've got two layers of Strickland review, basically. We've got the deficient, the claimed and effective assistance of trial counsel and the claimed and effective assistance of PCR counsel. Correct. And it seems like we have different standards for reviewing them. And for the trial counsel issues, I understand that we're looking at whether there is a substantial claim of ineffective assistance of counsel. Is that correct? Or are we actually applying the – in other words, are we saying is there a COA standard, is what you were arguing for, for determining whether there's a Strickland – whether there's ineffective assistance of counsel under Strickland of Hadley? Is that the standard of review? I realize it's easy to go in circles with this. Martinez analogized its use of the word substantial to two things. First of all, they said that it means has some merit, unquote. Some merit is what they meant by substantial. And second, they analogized the standard to the certificate of appealability standard. So they cite Miller L. That is Miller L. And if there is a fair question on which reasonable-minded jurists could differ, that is the standard for a COA, and that's the standard under Martinez. But for looking at Kuhn's, is the name of the PCR counsel. PCR counsel. We're just applying Strickland de novo, not through the lens of COA. Is that correct? I think that that's exactly correct. And this gets me back to the second part of Judge Sotoma's question, which is the record on that is not developed whatsoever. Because we do not know why post-conviction counsel did what he did or failed to do what we assert that he should have done, and that is a record that should be developed in the first instance before the district court. All we know ---- Kagan. What's your best claim that that's deficient? Because the Supreme Court has told us in Harrington and Primo and other cases that it's a very high bar and that the courts must consider whether there's any reason that the attorney might have acted in that way. Primo was using the AEDPA standard with respect to ineffective assistance and looked to whether there was any conceivable, reasonable, competent explanation for what trial counsel did. In that case, it was not filing a motion to suppress. And Primo said there was a ---- there was an arguable, competent reason not to do that because they were negotiating a plea. That was Primo. There are two differences here. One is that Primo was applying the AEDPA standard to ineffective assistance of trial counsel. We are looking at something different here. We're looking at post-conviction counsel. The AEDPA doesn't apply. That's strictly a cause and prejudice question. And second, the cause and prejudice question for post-conviction counsel only looks at, again, whether reasonable-minded jurists could differ on the question. And for that, we need further development of the record. I know I'm out of time, but I want to point out one other fact. One other fact, because it's important and it goes to whether an argument can be made that trial counsel, Mr. Hadley, was not ineffective for exposing his client, my client, to the public, the police polygraph. There is in the record a transcript of the deposition testimony of his defense investigator, Lisa Harmoning. She testified in a deposition for the post-conviction case. Part of her testimony is in the supplemental excerpt of record. Part of it is not. In the part that is not, it's still part of the record below. It's Exhibit 122, page 11. She said that it was Mr. Hadley's usual practice, usual practice, to have a private polygraph done first, to investigate, verify what the client is saying is the truth, before exposing that client to something that would be public and could be used to harm him, but that he did not do that in this case. Now, he called the – didn't he call a defense psychologist at the sentencing proceeding in mitigation? There were two, yes. And didn't – in the course of interviewing the client, didn't the psychologist essentially obtain the same information from Mr. Sexton that came out as the basis for his opinion in the sentencing proceeding? By then I would say the horse was already out of the barn. Well, there was no reason he had to use that testimony at sentencing. Well, if you want to – if you want to try and mitigate the horrific nature of the crimes, why wouldn't you call a defense psychologist? That would have been a strategic decision to make based on a clean slate at that point when the district attorney did not yet have the information. And then a confident defense lawyer would have had to decide, do I really want to open this up, or maybe I shouldn't call that psychologist at all. I never had an opportunity to make that reasonable strategic decision because the information was already out there. Okay. I guess my final question then is, if we order a remand to the district court, should we direct the district court in turn to grant a conditional writ so that it can be remanded to the courts of Oregon? No. Or is this the exception to Cullen v. Penholster, so we now are going to make a new record before a Federal habeas court? Because of the cause and prejudice standard, there is no deference required to a State court on whatever findings it may have made. The appropriate place for development of this record under the cause and prejudice standard would be in the district court, Judge Brown. Okay. Thank you, Mr. Weintraub.  Good morning. May it please the Court. I'm Janet Klapstein. I'm appearing on behalf of the Respondent of Haley. I'm sorry, Cosner. I think the merits of the primary claim are pretty straightforward. It's simply a Hill v. Lockhart sufficiency of advice prior to plea, and so it's kind of nonconsequential. The district court appropriately deferred to the findings of credibility of the State court. So I'd like to jump more directly into the Martinez issue, because that appears to be what the Court's interested in today. Well, I mean, we've got, as you point out, we've got a finding of adverse credibility with regard to Mr. Sexton's claims that he didn't understand he could get a consecutive sentence. To me, that's a very straightforward issue. I think so, too. The Martinez claim is the one that I'm really wrestling with. Yeah. And let me give you my take on Martinez, and that's all it is, because we're all kind of working our way through it. But Martinez, you know, the Supreme Court called it a narrow exception, and I think the reason they did so is precisely because there were no claims whatsoever litigated in the State post-conviction court, although that would have been an avenue of relief readily available. And the analogy I would put for the Court's characterization of that kind of claim as one that may give rise to cause and prejudice out for a defaulted claim is this. It harks straight back to Strickland, where the core reasons for looking at the competency or effectiveness of appellate counsel is precisely so the adversarial process works, that it functions, that it has an opportunity to have the give and take of evidence creation. And in Martinez, there's none of that whatsoever. And as applied here, this is a diametrical contrast to the performance of collateral challenge counsel in Martinez, who did nothing here. I think the supplemental memo we submitted shows we have something like 62 exhibits to submit at the State post-conviction court. We have a, you know, 47-page brief. We have a 7-page letter of opinion by the post-conviction court. We have the record fully developed. And so what we have here is really a night-and-day difference between how the Martinez case came up procedurally in this case, where what you have is a defendant or a Petitioner here now wishes to kind of give a nuanced version of the same claims he raised in the State court. Well, let me ask you the same question I asked Mr. Weintraub. As I read the record, there were seven grounds asserted by post-conviction counsel of trial counsel errors that constitute ineffective assistance of counsel. Now he has two more because he lost on those seven. And the argument is that post-conviction counsel was ineffective in failing to raise the polygraph issue and the turnover of the letter from the client. So the question I'm wrestling with is, in order to determine whether that is a substantial claim, don't we look to traditional Strickland analysis? And there is a record that has been developed. I know Mr. Weintraub obviously urges that there's more facts to be unearthed here. I'm not so sure, since we're applying a COA standard, that we can't do it on the basis of the record that's already been developed. And I'm having a hard time in the face of Oregon evidence law on what would or would not be admissible in the prosecution's case in chief at trial, understanding first of all why this wasn't a reasonable tactical decision, and secondly, with relatively low risk given that the results could not be used against the client, and then secondly, how there could be prejudice given Mr. Sexton's waffling back and forth from the very beginning of the case as to who was responsible for murdering his parents. And I think it's careful, as we did in the initial round of questioning, to distinguish effectiveness of Hadley, and perhaps it's easier simply to refer to them as Hadley and Kuhns to keep apart the players here. So vis-a-vis Hadley, I think the record was fully developed as to why Hadley made the strategic decision of, gosh, you're pressured for time, this kid says he's innocent. He did send out an investigator to California who had showed a documented history of him covering for a little brother, and so he did go into this polygraph blindly, but he made a strategic decision to do so because it could result in complete dismissal of charges. That didn't work out, and it's quite frankly not so much because the polygraph results, but because Petitioner then confessed yet again, a confession that simply replicated what he told the police at his time of his arrest. Moving over to the effective assistance of Kuhns, Kuhns did a, you know, really a yeoman's job of creating a record as to areas that seem to present claims of colorable ineffective assistance of Hadley. It's just that the Hadley had, you know, detailed explanations of why he took the steps he did. I don't see either the letter issue or the private polygraph issue as an issue that jumps out at me. Were I collateral counsel, were I Kuhns, that I would feel obligated to raise, partly because the decisions were explained strategically, which is kind of insurmountable in most Strickland cases, and because, as this Court has noted, the prejudice issue, this is a client who has already made flip-flopping back and forth, I confess, no, my brother did it, I confess, no, my brother did it, back and forth and back and forth, so his credibility is shot before he gets anywhere near entry of plea. And as a matter of fact, if we're talking about withdrawal of plea, he's still claiming now the brother did it and, you know, flip-flopping on that even now. In terms of the release of the letter, I think that that record, that's the only area where there might have been a, well, why did you do it this way, part of the record that was undeveloped, because in his post-conviction deposition, Petitioner never claimed, I didn't expect the letter to be released. He couldn't have magically woken up one day and said, well, you're here for a polygraph. Of course he's going to be polygraphed on the story that is contained in that letter. And by that time, that letter has already been released to the two defense mitigation experts. As a matter of fact, I checked this morning, and part of the reason some of these things, and I think Mr. Weintraub and I are kind of both struggling with the lack of supplemental excerpts, it's because of the quick turnaround. But, for example, Stanoulis, one of the defense experts at Sentencing, said that when he was interviewing this defendant at the time, Petitioner, he confronted him with information in that letter. Why did you do that? Oh, come on. You know, that's not the truth. And then Petitioner goes back to, well, I was abused, and reveals increasing grounds of abuse. So if I am in the posture of trial counsel in the collateral challenge, Kuhns, I'm going to look at that and say, where's the prejudice from the release, because he goes, simply goes back to the confession, and where's the prejudice, because if, in order to present mitigating evidence at all, both of my experts are going to have to talk about this kid's purported history of protecting the brother and being abused and taking it quietly and it all fulminating in this big explosion and murder. So I think, I don't know if that's – I think there are a lot of options under Martinez, not particularly for this case. And I think the Court's going to have to work through them. And that's – Let me see if I can bring you back to a question that Judge Acuda raised. In order to determine what constitutes a substantial claim, there is language in the Martinez opinion that suggests that essentially we apply a COA standard, which, as Mr. Weintraub accurately recites, is, you know, whether or not reasonable jurists could disagree, and if so, whether it deserves encouragement to proceed further. But if the claim is ineffective assistance of counsel, and we have to decide whether it's a substantial claim, why can't we apply traditional Strickland analysis and ask whether it violates prong one, did he have – you know, did it violate the standard of reasonable defense counsel in the community? Or two, was it prejudicial? And if our conclusion from the record as it is currently before us is that we – that it is sufficient to make that determination, then why can't we simply declare this is not a substantial claim, therefore, it doesn't meet the narrow circumstances under Martinez, therefore, he's not entitled to a remand? I think this Court can. And I agree that Martinez itself is kind of internally inconsistent because it goes from reference to an analogy to a certificate of fealability. And, of course, this Court does that all the time and determines this isn't a substantial claim. But in the Martinez opinion, the Court goes on to say the appellee, the respondent can respond. The State may answer that an effective assistance claim is not a substantial one, it doesn't have any merit, or that it's wholly without factual support, or that the attorney in the initial review proceeding, that is, Kuhn's here, met constitutional standards. And if we can – that's what I'm doing here today. Kennedy. But that – now, that definition that you just referred to of insubstantial in Martinez is – seems to be a lot lower, doesn't it? Is that what you mean by the internal inconsistency? No. What I meant by internal inconsistency is the fact that the Court in one place refers to certificate of fealability, and yet goes on to say that we can meet this claim by disputing that it's a substantial one. And I think there's kind of an open area, what do you mean – what does the Court mean by a substantial claim? And procedurally – and again, in this case, this post-conviction attorney did a heck of a job. Now, if this Court were faced with another where there's almost no record, then I think you're going to have to have some procedural decisions about, A, whether it's a substantial claim. For example, it may be a lousy trial attorney, but there's no prejudice, in which case there's no substantial Strickland claim. There's no reason why collateral counsel should have raised it, because if it's clear, let's say this defendant got on the stand, as he did at sentencing, and confessed. So Strickland itself, and even in certificates of fealability, you have to determine whether there's really a viable claim of some nature that is substantial under Strickland. Martinez is odd in a couple other ways, and that's because it doesn't really articulate what kinds of procedures should follow in the event there is a substantial claim under Martinez. And there's about six different ways you could approach it. One of the things we – that we have under consideration, as you saw from the order, is this motion to remand right now. Right. All this argument you're making now, I assume, means you think a remand is not necessary? I think the remand is not necessary. Were this Court to disagree with me, I think the remand remedy would only be for the district court to try to apply Martinez itself. Then you get into the issue, the case-specific issues of whether it should be a stay and abate proceeding, or whether the parties – I have seen one case recently at Post-Martinez where the parties have stipulated to sending it back to State court. There are a lot of options post-remand. Well, opposing counsel says it's not necessary because if, in fact, there's cause and prejudice to avoid the procedural bar, then the Federal courts review de novo. They're not bound by a deference. I understand that. You don't disagree with that, do you? No, I don't disagree with that. And the same would be true in a case of actual innocence on a defaulted claim. It's an equitable remedy, but the fact that it is an equitable remedy may provide for some flexibility in the nature of the relief, depending on what the underlying claim is. So for us, so we're looking at both just straight Strickland analysis of Kuhn's performance and a substantial claim, whatever that is, in the review for Hadley's performance. And the question, as Judge Toshiba notes, is on either of those, is the record less than fully developed so that it would be necessary to remand to the district court for further development? And I take it that your answer is on either of those issues, no more development is necessary in order to make a determination. I don't think it is necessary. I think this Court could find, well, I'm not so sure about this fact or that fact. But I think there's plenty in the record of State court that explains why Hadley did what he did, which allowed a reasonable professional performance by Kuhn's in not tweaking the ineffectiveness claim as to Hadley with respect to going ahead with a polygraph or releasing a letter in order to accomplish the polygraph. So in that sense, no, I don't think there's really, pretending this is a certificate of appeal, I don't think there's a substantial claim that Kuhn's misperformed, underperformed, nor do I think there's a substantial claim this Petitioner was prejudiced because he said the very same things later to his experts and now in a habeas petition he's back and forth. This Court may disagree, and I know there will be further development on what now after Martinez, including remand for limited hearings, remand for stay and abate, remand for, you know, negotiation, settlement, things like that. But on this case, on this record, this doesn't present any need to do that. That's why we wanted to have you in, because at some point we're going to have to give some direction to the district courts on what they're supposed to do if we grant some of these Martinez remands. Okay. Kagan. It's just not here. Thank you very much. Mr. Weintraub, I'll give you a couple minutes on Ravalli. Unless the Court has further questions, I have nothing further. I do have a question for you. What is it that you expect needs to be developed or would be developed on remand? What evidence and to which of the two Strickland issues? The primary issue that needs to be developed is why didn't Koons raise this issue? There is no record of that. We do know why he did what? Why Koons, the post-conviction lawyer, did not bring this up in the State court. We do know that he had a letter from Hadley that was turned into the affidavit that's a part of the record here. And that letter ---- It showed that it was ineffective. So what evidence would be developed that would show that he fell below the level of professional conduct? Our argument here is that there was no arguable strategic purpose to leave that claim out. What downside was there to have included that claim? Did he know about the claim? That would be part of what needs to be developed. We believe the record shows that he did. I think we could prove that without a doubt if there were a remand. Was there any purpose to leaving it out? Perhaps Koons can think of something. Right now, there is nothing in the record that shows that there was any purpose to abandon that claim. He had Hadley's letter. Well, claim or grounds, it's all the same claim, right? Well, Judge Brown said no. Judge Brown said it was a different claim and it was defaulted. Either she's wrong about that or she's wrong under Martinez, and it should go back either way. Thank you. Thank you. Okay. Thank you both. Very well argued. Sexton v. Kosner is submitted, and we'll puzzle our way through it and get you an answer as soon as we can.
judges: Tashima, Tallman, Ikuta